**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JEREMY S. FABIAN,**

         **Plaintiff,**

 vs.                  5:13-cv-01063
                         (MAD/TWD)

**CAROLYN W. COLVIN,**
*Acting Commissioner of Social Security*,

         **Defendant.**
_____

**APPEARANCES:**            **OF COUNSEL:**

**OLINSKY LAW GROUP**         **HOWARD D. OLINKSY, ESQ.**
300 S. State Street
Suite 420
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**  **DAVID L. BROWN, ESQ.**
Office of General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

   Plaintiff commenced this action on August 29, 2013, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* Dkt. No. 1.

   On January 19, 2011, Plaintiff protectively filed an application for DIB and SSI, alleging a disability onset date of October 8, 2010. *See* Dkt. No. 8, Administrative Transcript ("T."), at 140-

153. These applications were initially denied on May 10, 2011. *See id.* at 68-69. Plaintiff requested a hearing, which was held on April 24, 2012 before Administrative Law Judge ("ALJ") John P. Ramos. *See id.* at 33-67. The ALJ issued a decision on June 21, 2012, finding that Plaintiff was not disabled. *See id.* at 18-27. Request for review by the Appeals Council was timely filed, and, on July 8, 2013, the request was denied, rendering the ALJ's decision the Commissioner's final decision. *See id.* at 1-6. Plaintiff commenced this action for judicial review of that decision by filing a complaint on August 29, 2013, *see* Dkt. No. 1, and both parties moved for judgment on the pleadings. *See* Dkt. Nos. 12, 15. Having reviewed the administrative records, the Court orders that the Commissioner's decision is reversed and remanded for further consideration consistent with this Memorandum-Decision and Order.

## II. BACKGROUND

Plaintiff's date of birth is May 10, 1970, and he was forty-one years old at the time of the hearing. *See* T. at 252. Plaintiff's intellectual functioning has consistently been documented in the borderline range. *See id.* at 268. Plaintiff's relevant work history began in March 1997 as a member of a cleaning crew for Tops, a grocery store, where Plaintiff stayed through September 1998. *See id.* at 214, 243. He worked twenty-five hours per week. *See id.* He then continued in that field as a janitor for the Waterloo School District from October 1998 through June 2001 working full-time. *See id.* Plaintiff then worked as a cook at Burger King from October 2001 through February 2005 working twenty-four hours per week, *see id.*, and continued in the fast food business at Sal's Birdland Fast Food Wings and Chicken working twenty-four hours per week as a cook and cleaner from May 2005 through August 2009. *See id.* Plaintiff was employed by Securitas as a security guard at a front gate from January 2010 through March 2010.

*See id.* at 44, 231. Plaintiff then worked twenty-four hours per week as a dishwasher at Luigi from June 2010 through October 2010. *See id.* at 220, 232.

Plaintiff claims that his ability to work is limited by a learning disability, impaired hearing, depression, mental illness, and symptoms of personality disorders. *See id.* at 212. Plaintiff claims that he had to leave his employment in 2010 due to a "nervous breakdown", *see id.* at 44, and the medical records reflect that he was admitted overnight to the comprehensive psychiatric emergency program ("CPEP") at St. Joseph's Hospital Health Center through the emergency department on March 8, 2010. *See id.* at 301-10. Although discharged the following day, Plaintiff was referred for outpatient psychiatric treatment for his complaints of depressive symptoms, inability to function due to his emotional state, and poor social judgment. *See id.* at 308. Plaintiff began therapy and psychiatric treatment with Dr. Steven Naprawa, John Harkulich, Ph. D. and Tracy Torelli, LMSW. *See id.* at 434. Plaintiff was diagnosed with a major depressive disorder with unspecified persistent mental disorder, an unspecified personality disorder, and problems with relationships, occupations, and family support. *See id.* at 337, 351, 354, 356, 358.

During a psychiatric assessment, Plaintiff reported that he felt depressed, lazy, tired, and hopeless and that he gets fired from a lot of jobs due to his difficulties with paying attention, keeping up, and saying inappropriate things. *See id.* at 339. The initial treatment plan included assisting Plaintiff to identify, develop, and utilize adaptive interpersonal behaviors and frustration tolerance behaviors, and it is noted within the St. Joseph's treatment records that Plaintiff had some success with the changes he made to his interpersonal patterns. *See id.* at 343, 347. During the period of time of his outpatient psychiatric treatment in 2010, Plaintiff was laid off from his employment as a dishwasher, and he experienced difficulty obtaining new employment. *See id.* at 56-57, 349, 354, 356.

3

Plaintiff was referred to Unity House for employment services where he began job development on January 27, 2011.  *See id.* at 251.  With Unity House's assistance, Plaintiff obtained a position as a utility worker for North Delaware Company & Hospitality Services located within Syracuse's Hancock International Airport.  *See id.* at 42, 251.  He worked eight-hour shifts, three days per week and continued to hold that employment up until the time of the hearing.  *See id.* at 43, 59.  This employment was not disqualifying substantial gainful activity ("SGA") under 20 C.F.R. § 404.1545.  *See* T. at 25.  Unity House also provided Plaintiff with a job coach, Thomas Hughes, who provided on-the-job assistance with reading, identifying his managers, dealing with personal interaction, and showing him how to perform tasks.  *See id.* at 43.

Dr. Dennis Noia, a psychological examiner, found that Plaintiff appeared to be capable of understanding and following simple instructions, performing simple and some complex tasks, with supervision and independently, maintaining attention and concentration, keeping a routine and maintaining a schedule, learning new tasks, making appropriate decisions, relating to and interacting moderately well with others, and dealing with stress with continued treatment.  *See id.* at 365-67.  The ALJ gave significant weight to Dr. Noia's opinion.  *See id.* at 25.  Dr. G. Kleinerman, a State agency medical consultant in psychiatry, performed an examination of Plaintiff on or about April 13, 2011.  *See id.* at 369-85.  After review of Plaintiff's medical and employment history, Dr. Kleinerman opined that Plaintiff is capable of meeting the basic mental demands of unskilled work.  *See id.* at 385.  The ALJ assigned some weight to this opinion because the records showed that Plaintiff had some greater limitations than was reflected in Dr. Kleinerman's opinion.  *See id.* at 25-26.

Dr. Stephen Coleman, an examining psychologist, opined that Plaintiff needs specific, consistent, and regular work supports for part-time employment. *See id.* at 402. Also, according to Dr. Coleman, Plaintiff is not able to be in regular contact with the public, and Plaintiff is likely to get sidelined easily so he needs an extremely limited set of stimuli. *See id.* Dr. Coleman also opined that Plaintiff would be "shut down" from recurrent bouts of depression. *See id.* The ALJ gave limited weight to this opinion because it was inconsistent with other medical evidence and Plaintiff's employment history. *See id.* at 26.

The ALJ made the following findings: (1) Plaintiff met the insurance status requirements of the Social Security Act through September 30, 2015; (2) Plaintiff's part-time employment and earnings did not reach the level of substantial gainful activity; (3) Plaintiff's impairments of left-sided hearing loss, depression, and borderline intellectual functioning were severe, and his dermatological condition on his right hand was not a severe impairment; (4) Plaintiff did not have an impairment or combination of impairments that meets a listed impairment as set forth in 20 C.F.R. Part 404, Appendix 1, 2.10, 12.04, 12.05; (5) Plaintiff has the residual functional capacity ("RFC") to perform work with certain limitations (discussed in detail below); and (6) Plaintiff is capable of performing past relevant work as a school janitor as he actually performed it. *See* T. at 20-27. The ALJ determined that Plaintiff has the retained RFC

> to understand and follow simple instructions and directions;
> perform simple tasks with supervision and independently; maintain
> attention and concentration for simple tasks; and regularly attend to
> a routine and maintain a schedule. [Plaintiff] can relate to and
> interact with others to the extent necessary to carry out simple tasks
> but should avoid work requiring more complex interaction or joint
> effort with other workers to achieve work goals, and he should not
> have frequent interaction with the public. [Plaintiff] can handle
> reasonable levels of simple work-related stress, meaning that he can
> make occasional simple decisions directly related to the completion
> of his tasks in a stable, unchanging work environment. [Plaintiff]

5

> should not work in an environment with noise levels greater than moderate, as defined by the Dictionary of Occupational Titles.

*Id.* at 23-24. Based upon those findings, the ALJ determined that Plaintiff was not disabled. *See id.* at 27.

## III. DISCUSSION

### A. Standard of Review

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). The Court must examine the Administrative Transcript to determine whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987)). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotations omitted).

If supported by substantial evidence, the Commissioner's factual determinations are conclusive, and it is not permitted for the courts to substitute their analysis of the evidence. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983) (stating that the Court "would be derelict in our duties if we simply paid lip service to this rule,

while shaping [the Court's] holding to conform to our own interpretation of the evidence"). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Analysis**

On appeal to this Court, Plaintiff contends that the ALJ did not apply the correct legal standards when determining Plaintiff's RFC and that the RFC, as determined, precluded Plaintiff from returning to past relevant work as it was performed or as it is generally performed. *See* Dkt. No. 12.

For purposes of both DIB and SSI, a plaintiff is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform

7

> his past work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (citations omitted). A plaintiff bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step. *Berry*, 675 F.2d at 467.

### *1. Plaintiff's credibility*

At the fourth step in the analysis, the ALJ determines a plaintiff's RFC, which is what a plaintiff can still do despite his limitations. *See* SSR 96-8P, 1996 WL 374184, *2. The "RFC is an administrative assessment of the extent to which an individual's medically determinable impairments(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* at *2. The assessment takes into consideration the limiting effects of all of a plaintiff's impairments, severe and non-severe, and the determination sets forth the most a plaintiff can do. *See* 20 C.F.R. § 404.1545(a)(1), (e). The ALJ assesses a plaintiff's subjective symptoms using a two-step process. *See* 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(3), (e); SSR 96-7P, 1996 WL 374186, *1. At the first step, the ALJ must determine whether a plaintiff has an underlying impairment that is established by acceptable clinical diagnostic techniques and could reasonably cause a plaintiff's symptoms. *See* SSR 96-7P, 1996 WL 374186, *2. Next, the ALJ "must evaluate the intensity, persistence, and limiting effects of the [plaintiff's] symptoms to determine the extent to which the symptoms limit the [plaintiff's] ability to do basic work activities." *See id.* at *2.

This evaluation must be based upon the entire case record, which includes a plaintiff's statements about his symptoms, statements and information provided by treating psychologists,

8

and statements from other people that describe how the symptoms affect a plaintiff. *See* 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(3), (e); SSR 96-7P, 1996 WL 374186, *1. The ALJ must make credibility findings when there is conflicting evidence about a plaintiff's symptoms. *See Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999). Before there is a determination that a plaintiff is not a credible reporter of his limitations, the ALJ must consider evidence of incapacity from those who have observed the plaintiff, and "'the ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error.'" *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 57 (W.D.N.Y. 2002) (quoting *Pagan v. Chater*, 923 F. Supp. 547, 556 (S.D.N.Y. 1996)); *see McArthur v. Comm'r of Soc. Sec.*, No. 3:06-CV-860, 2008 WL 4866049, *10 (N.D.N.Y. Nov. 7, 2008); *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (stating that the ALJ's decision to find a plaintiff not credible must set forth the factors weighed with specificity to enable judicial review); *Maisch v. Heckler*, 606 F. Supp. 982, 991 (S.D.N.Y. 1985).

In this case, the ALJ described Plaintiff's depression, learning disability, and hearing impairments and found them to be medically determinable impairments that could reasonably cause Plaintiff's symptoms. *See* T. at 24. However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible because they [were] unsupported by medical and other evidence, competent medical opinion, and testimony." *See id.* at 24. The ALJ appropriately reviewed Plaintiff's testimony about activities of daily living and his medical treatment in assessing Plaintiff's credibility. *See* 20 C.F.R. § 404.1529(c)(3)(i), (v), (vii).

Plaintiff contends that it was error for the ALJ to not mention or acknowledge statements that were submitted by Plaintiff's sister-in-law and job coach or a medical report submitted by Plaintiff's treating therapist and psychiatrist. *See* Dkt. No. 12. The family letter indicated that

Plaintiff is "easily overwhelmed and anxious" on the job and Plaintiff's "confusion and frustration leads to angry outbursts". T. at 261-262. Plaintiff was described as "suicidal" and "ranting" after several weeks into some jobs. *See id.* at 262. His sister-in-law stated that his job coach was essential in getting Plaintiff through "difficult days". *See id.* at 262. Plaintiff's sister-in-law also stated that Plaintiff's sister cleans his apartment, Plaintiff's family sorts through his mail, Plaintiff's mother oversees his bank accounts, and Plaintiff's mother pays for his car, car insurance, and car repairs. *See id.* at 262. The job coach submitted a letter that outlined Plaintiff's "destabilizing issues", which include stress, anger, inappropriate behaviors, difficulty reading and writing, impulsivity, necessary reminders to follow safety protocols, and coping with new and unexpected situations. *See id.* at 251. The therapist/psychiatrist's medical report briefly stated that Plaintiff struggles to be flexible, has difficulty making decisions under pressure, will have a hard time multitasking, and has difficulty with conflict, difference of opinion, and authority. *See id.* at 316.

This evidence, if considered by the ALJ, could corroborate Plaintiff's claimed symptoms and, in turn, support Plaintiff's credibility. *See id.* at 40-41, 48-49, 51-52, 58-59, 60-61. Of course, it is within the province of the ALJ to credit or reject Plaintiff's submitted statements and report, "but it was an error of law for him to fail to consider expressly such subjective complaints." *Maisch*, 606 F. Supp. at 991.

Contrary to Defendant's urging that it was harmless error to not consider the letters from Plaintiff's sister-in-law and job coach and the therapist's medical report because substantial evidence still supports the decision, the risk in depriving Plaintiff of the right to a determination based upon the correct legal standards is unacceptable, and the Court declines to find the error harmless where the evidence presented here could lead to more than one conclusion. *See*

10

*Johnson*, 817 F.2d at 986; *Davis v. Colvin*, No. 5:12-cv-641, 2013 WL 4812024, *4 (N.D.N.Y. Sept. 10, 2013). The ALJ specifically found Plaintiff's statements about his symptoms to be not credible because they were unsupported by the medical and other evidence. *See* T. at 24. Without acknowledging and addressing the letters and medical report, it is not clear to the Court on review whether the ALJ properly reviewed all the evidence related to Plaintiff's credibility. *See Padula v. Astrue*, 514 Fed. Appx. 49, 51 (2d Cir. 2013); *Lewis*, 62 F. Supp. 2d at 651; SSR 96-7P, 1996 WL 374186, *2.

### *2. Dr. Coleman's Consultation Report*

Plaintiff contends that the limited weight afforded to Dr. Coleman's medical source statement was an error because the ALJ's evaluation of the statements was logically flawed and unsupported by substantial evidence. *See* Dkt. No. 12. Plaintiff does not argue that Dr. Coleman is a treating physician. *See id.* Plaintiff argues that when the ALJ indicated that Dr. Coleman's opinion was from a non-treating physician, the ALJ was ambiguous on whether he applied an unknown standard to the opinion. *See id.*

The ALJ is required to give "good reasons" in the decision for the weight afforded to a treating source's opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). There is no such requirement to provide good reasons for the weight afforded to a non-treating physician's opinion. *See Pidkaminy v. Astrue*, 919 F. Supp. 2d 237, 245 (N.D.N.Y. 2013) (citing *Hall v. Astrue*, 677 F. Supp. 2d 617, 629 (W.D.N.Y. 2009).

The Court does not find any merit to the contentions that the ALJ silently applied an unknown standard and, therefore, erroneously assessed Dr. Coleman's opinion. Beyond the designation as a non-treating medical opinion, further designation was not required. The Court also finds that the ALJ's determination to give Dr. Coleman's opinion limited weight was

11

supported by substantial evidence in the record. The ALJ appropriately weighed Dr. Coleman's opinion based upon the examining relationship, consistency of the opinion with the medical records, and Dr. Coleman's familiarity with the information in Plaintiff's case record. *See* 20 C.F.R. §§ 404.1527(c)(1)-(4), 416.927(c)(1)-(4) (outlining the factors to be considered when eciding the weight to give any medical opinion). Specifically, the ALJ found that Dr. Coleman's opinions were inconsistent with the medical evidence in the file and the consultation examinations and reports. T. at 26. The ALJ also found that Dr. Coleman's opinion was contrary to Plaintiff's past employment history. *See id.*

The ALJ described that Dr. Coleman's medical opinion was based upon "a one-time evaluation arranged for the purposes of obtaining evidence for the claimant's disability claim". *Id.* at 26. It is Plaintiff's contention that this description indicates that the ALJ was "inherently suspect" of Dr. Coleman's opinion, and, thus, the assessment was made in error. *See* Dkt. No. 12. The Court does not agree that the description indicates any improper or prejudicial assessment of Dr. Coleman's opinion. The Court finds that the ALJ properly described the medical opinion based upon the weight-determining factors to be considered, i.e., the examining relationship. *See* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1).

### *3. Past Relevant Work*

Plaintiff contends that he is not able to perform the past relevant work as a janitor in a school – not as he actually performed it and not as it is generally performed in the national economy. *See* Dkt. No. 12. According to Plaintiff, the ALJ's assessment that Plaintiff only occasionally saw students and teachers during his past employment as a janitor is an error because the testimony demonstrated that Plaintiff's job involved frequent interaction with students or teachers, which is in contravention with his RFC. *See id.* Plaintiff's RFC states that he should not

have frequent interaction with the public. T. at 23. The sole basis for Plaintiff's argument is that the term "frequent" is defined as between one-third and two-thirds of an eight-hour work day pursuant to Social Security Ruling 83-10, 1983 WL 31251. *See* Dkt. No. 12. That policy statement defines "frequent" only within the context of exertional abilities to perform sedentary, light, or medium work. *See* SSR 83-10, 1983 WL 31251, *5. The Court finds that Plaintiff's reliance upon this definition is misplaced because it does not apply to Plaintiff's RFC or his abilities to perform his past relevant work.

Plaintiff's last contention, that he is unable to perform the job of janitor as it is performed within the national economy and defined within the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT"), job number 382.664-010, is also unavailing. A plaintiff is not disabled "when it is determined that he or she retains the RFC to perform: 1. The actual functional demands and job duties of a particular past relevant job; *or* 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSR 82-61, 1982 WL 31387, *2. It is of no moment that Plaintiff may or may not have the retained RFC to perform the job of janitor within the national economy because the ALJ found that Plaintiff was able to perform work as a janitor as Plaintiff performed it. *See Grogg v. Comm'r of Soc. Sec.*, No. 5:11-CV-1381, 2014 WL 1312325, *12-13 (N.D.N.Y. Mar. 31, 2014) (explaining that step four in the disability analysis requires that a plaintiff show an inability to perform his "previous specific job *and* an inability to perform [] past relevant work generally").

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying disability benefits is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of the 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**

Dated: February 25, 2015
       Albany, New York

*/s/ Mae A. D'Agostino*
Mae A. D'Agostino
U.S. District Judge